IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| L-3 COMMUNICATIONS CORPORATION, ) et al., ) ) Plaintiffs, ) ) v. ) ) SERCO, INC., ) ) Defendant. ) | Case No. 1:15-cv-00701-GBL-JFA |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant Serco, Inc. ("Serco" or "Defendant")'s 12(b)(1) Motion to Dismiss (Doc. 34). This is a contract dispute case where Plaintiffs L-3 Communications Corporation and L-3 Applied Technologies, Inc. have asserted claims against Serco for common law and statutory conspiracy, aiding and abetting tortious interference, negligent misrepresentation of a business relationship, violations of the Colorado Organized Crime Control Act, breach of fiduciary duty, and violation of the Virginia Uniform Trade Secrets Act.

There are two issues before the Court. The first issue is whether the Court has subject matter jurisdiction over this action under Virginia law where the named Plaintiffs fail to provide sufficient evidence of any right or business expectancy to the losses alleged. The second issue is whether the Court has subject matter jurisdiction over this action under Virginia law where Plaintiffs' declaratory judgment claims are not ripe for adjudication.

The Court grants Defendant's Motion to Dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure for two reasons. First, the Court finds that each entity has failed to

provide sufficient evidence of any right or business expectancy to the losses alleged because: (1) any right or business expectancy necessarily arose from the Subcontract in dispute; (2) Plaintiffs failed to sufficiently establish that they are parties to or assignees of the Subcontract; and (3) Plaintiffs failed to establish the requisite elements of standing under Article III. Second, the Court finds that Plaintiffs' declaratory judgment claims are not ripe for adjudication because Plaintiffs' injuries alleged in Counts 80 and 81 of the Amended Complaint have not yet occurred. Accordingly, the Court **GRANTS** Defendant's Motion (Doc. 34).

## I. BACKGROUND

### A. Basic Contractual Background

In April 2004, the United States Air Force Space Command ("USAFSC") awarded an indefinite delivery, indefinite quantity ("IDIQ") contract to SI International, Inc. ("SI International")[1] (Doc. 63). Under the IDIQ contract, the USAFSC tasked SI International, as the prime contractor, with managing the testing and upgrading of USAFSC sites around the world to protect them from high-altitude electromagnetic pulse ("HEMP") events, among other tasks. *Id.* Under the IDIQ, SI International awarded task orders for HEMP work to parties with which it had subcontracted. *Id.* In December 2004, SI International and The Titan Corporation ("Titan") entered into a subcontract ("Subcontract") whereby Titan, as the subcontractor to SI International, would perform HEMP work under the IDIQ (Doc. 35). All subcontractor work under the IDIQ contract flowed through the Subcontract. *Id.*

---

[1] Serco, Inc. is a New Jersey corporation and is headquartered at 1818 Library Street, Suite 1000 Reston, VA 20190 (Doc. 63). Plaintiffs allege that SI International is the predecessor to Serco, Inc. (Doc. 114).

## B. Assignment of the Subcontract[2]

In January 2002, Titan merged with Jaycor and remained The Titan Corporation (Doc. 35). On June 2, 2005, Titan entered into a merger agreement with the L-3 Communications Corporation's subsidiary Saturn VI Acquisition Corp., and Titan survived the merger as a wholly-owned subsidiary of L-3 Communications Corporation. *Id.* On December 6, 2005, Titan changed its name to L-3 Communications Titan Corporation. *Id.* On December 13, 2007, L-3 Communications Titan Corporation changed its name to L-3 Services, Inc. *Id.* Through a December 20, 2011 Contribution Agreement, L-3 Services, Inc. assigned all of its assets in its Applied Technologies Division to the newly formed L-3 Applied Technologies, Inc. and L-3 Applied Technologies, Inc. became a subsidiary to L-3 Services, Inc. *Id.*

Plaintiffs allege that this Contribution Agreement transferred the Subcontract from L-3 Services, Inc. to L-3 Applied Technologies, Inc.[3] (Doc. 35). Defendant argues that the Subcontract, by its terms, is an asset that required Serco's express, written consent for L-3 Services, Inc. to assign it to L-3 Applied Technologies, Inc.[4] (Doc. 123). Therefore, Defendant argues this Contribution Agreement did *not* transfer the Subcontract to L-3 Applies

---

[2] *See* "L-3 Flow Chart" attached to this Memorandum Opinion and Order.

[3] The Contribution Agreement provides: "Transferor [L-3 Services, Inc.] hereby contributes, assigns, transfers, conveys to and vests in Transferee [L-3 Applied Technologies, Inc.], its successors and assigns, all of Transferor's right, title and interest, legal and equitable, in and to Assets [of L-3 Services Inc.'s Applied Technologies division], to have, hold and use forever" (Doc. 35).

[4] The Subcontract provides: "Neither this Subcontract nor any right or duty under it, except the right to receive payment, may be assigned by Subcontractor, without prior written consent of Prime Contractor, which consent may be withheld in the sole discretion of Prime Contractor" (Doc. 35).

Technologies, Inc. because the prime contractor (SI International) did not provide the specific consent required in the language of the Subcontract.[5] *Id.*

**C. Plaintiffs' Conspiracy Allegations**

Plaintiffs allege that in or around June 2009, Defendant and Jaxon (a newly formed business) entered in to a coordinated and fraudulent scheme (the "Jaxon-Serco Scheme") to rig the subcontract bidding process in favor of Jaxon for HEMP-Testing related task orders (Doc. 63). Plaintiffs contend that Defendant, in collusion with Jaxon, hired Plaintiffs' former engineers, and technicians, in order to exploit proprietary and confidential information. *Id.*

In addition, Plaintiffs allege that Defendant knowingly used this tactic to exclude Plaintiffs from receiving information about the task orders on time, making it practically impossible for Plaintiffs to participate in the bidding process. *Id.* Specifically, Plaintiffs argue that their business expectancy of receiving task orders was "based on its unique scientific excellence, proprietary technical know-how, and recognized preeminence in the field of HEMP-testing and maintenance" as well as their prior performance as a subcontractor (Doc. 114). Plaintiffs allege that but-for Defendant's scheme of hiring Plaintiffs' former employees and rigging the bidding process, the task orders would have been awarded to them. *Id.*

---

[5] The Contribution Agreement provides: "Notwithstanding anything to the contrary in this Agreement, this Agreement *shall not constitute an assignment or transfer* of any Asset or interest therein [a "Delayed Asset"] as to which (i) *an assignment or transfer thereof without a consent of (or filing with) a third party or governmental authority (a "Required Consent")* would constitute a breach or violation thereof or of applicable law, or would adversely affect the rights or obligations thereunder to be assigned or transferred to Transferee, and (ii) *all such Required Consents shall not have been obtained* with respect to such Asset or interest therein prior to the date hereof." (Doc. 35).

### D. Injuries for Which Plaintiffs Seek Relief in This Action

Plaintiffs' Amended Complaint sets forth 81 counts against Serco, including tortious interference with nondisclosure agreements (Counts 1-5), tortious interference with business expectancy (Counts 6-39), aiding and abetting tortious interference (Counts 40-74), conspiracy (Counts 75-76), violations of the Colorado Organized Crime Control Act ("COCCA") (Counts 77-79), and declaratory judgment for breach of an alleged fiduciary duty to L-3 and misappropriation of trade secrets under the Virginia Uniform Trade Secrets Act ("VUTSA") (Counts 80-81) (Doc. 63).

In their declaratory judgment claims (Counts 80 and 81), Plaintiffs seek declarations that Defendant's use of L-3 proprietary information, acquired in Subcontract bids, which Jaxon uses in *any* future competition, is a breach of Defendant's fiduciary duty to Plaintiffs and a violation of the Virginia Uniform Trade Secrets Act (Doc. 63). Plaintiffs seek damages in excess of $80,000,000.00, including lost profits, unjust enrichment, and disgorgements of unlawful profits from the alleged Jaxon-Serco scheme (Doc. 35). Defendant argues that these declaratory claims are not ripe for adjudication because they are based on injuries that *might* occur *if* Defendant competes with Plaintiffs for future projects "currently being planned" by the USAFSC. *Id.*

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) allows a defendant to move for dismissal when the court lacks jurisdiction over the subject matter of the action. Fed. R. Civ. P. 12(b)(1). In considering a 12(b)(1) motion to dismiss, the burden lies with the plaintiff to prove that federal subject matter jurisdiction is proper. *See United States v. Hays*, 515 U.S. 737, 743 (1995) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). There are two ways in which a defendant may present a

12(b)(1) motion. First, a defendant may attack the complaint on its face when the complaint "fails to allege facts upon which subject matter jurisdiction may be based." *Adams*, 697 F.2d at 1219. In such a case, all facts as alleged by the plaintiff are assumed to be true. *Id.*

Alternatively, a 12(b)(1) motion to dismiss may attack the existence of subject matter jurisdiction over the case apart from the pleadings. *See Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)); *White v. CMA Constr. Co.*, 947 F. Supp. 231, 233 (E.D. Va. 1996). In such a case, the court may consider evidence outside the pleadings and regard the pleadings as mere evidence to determine the existence of jurisdiction. *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004). As a result, plaintiff's allegations find no presumption of truth, and a dispute of material facts will not preclude the trial court from evaluating the merits of claims underlying jurisdiction. *U.S. ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009).

## IV. ANALYSIS

The Court **GRANTS** Defendant's 12(b)(1) Motion to Dismiss because (1) any right or business expectancy necessarily arose from the Subcontract in dispute; (2) Plaintiffs failed to sufficiently establish that each entity is a party to or assignees of the Subcontract; (3) Plaintiffs failed to establish the requisite elements of standing under Article III; and (4) Plaintiffs' injuries alleged in Counts 80 and 81 of the Amended Complaint are not ripe for adjudication because they have not occurred.

### A. Plaintiffs' Contractual Rights and/or Business Expectancy

#### 1. Any Rights Or Business Expectancy Necessarily Arose From The Subcontract

The Court finds that each entity fails to provide sufficient evidence of any contractual right or business expectancy to the losses alleged. Under Virginia law, in order to state a claim

for intentional interference with contractual rights or business expectancy a plaintiff must plead facts showing: (1) the existence of a valid contractual relationship or business expectancy; (2) the putative interferer's knowledge of the relationship or expectancy; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resulting damage to the plaintiff. *Priority Auto Grp., Inc. v. Ford Motor Co.*, 757 F.3d 137, 143 (4th Cir. 2014). In order to satisfy the first element, there must be allegations to establish a "probability" of future economic benefit to a plaintiff. *Commercial Bus. Sys. v. Halifax Corp.*, 253 Va. 292, 301 (Va. 1997). Allegations of a "possibility" that such benefit will accrue is insufficient. *Id.* In certain contexts, including interference with prospective businesses and business expectancies, a plaintiff must also allege as part of its prima facie case "that the defendant employed improper methods." *Lewis-Gale Med. Ctr., LLC v. Alldredge*, 282 Va. 141, 149 (Va. 2011).

Plaintiffs argue that the present suit is not based on exclusive reliance on the Subcontract, but rather on Plaintiffs' business expectancy of receiving task orders (Doc. 114). Plaintiffs raise three arguments in support of this theory. *Id.* First, Plaintiffs contend that their business expectancy was "based on its unique scientific excellence, proprietary technical know-how, and recognized preeminence in the field of HEMP-Testing and maintenance" as well as their prior performance as a subcontractor. *Id.* In support of this argument, Plaintiffs cite *Buffalo Wings Factory, Inc. v. Mohd*, 622 F. Supp. 2d 325 (E.D. Va. 2007), an opinion deciding a Rule 12(b)(6) motion to dismiss, for the proposition that "tortious interference includes 'interference with a continuing business or other customary relationship not amounting to a formal contract'" (Doc. 114). Defendant argues that *Mohd* is distinguishable from the present matter because the defendant's central argument was that the plaintiff failed to allege that a *contract* or expectancy existed at all. *See Mohd*, 622 F. Supp. 2d 325 (E.D. Va. 2007); Doc. 123. Here, the Subcontract

is the center of the dispute. Defendant argues that the Subcontract is the only source from which any rights or business expectancy might arise. *Id.* Being a party to or an assignee of the Subcontract creates an expectation of receiving future task orders. *Id.* Defendant argues that since neither named Plaintiff is a party to nor an assignee of the Subcontract, it follows that neither named party can have any rights or business expectancy outside of the Subcontract. *Id.*

Second, Plaintiffs argue that its "group of scientists and engineers, and their specialized technology and intellectual property, operating out of Colorado Springs, Colorado," and not any corporate entity, held the business expectancy (Doc. 114). Defendant argues that these employees were not capable, in and of themselves, of losing any task orders, and that Plaintiffs cannot assert the rights of the employees in this claim (Doc. 123). As a threshold matter, the named Plaintiffs necessarily bear the burden of establishing standing. *See S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 181 (4th Cir. 2013). Defendant contends that none of the members of this group have a personal expectancy for the alleged lost work under the task orders (Doc. 123). Likewise, none of the members of this group were or could ever be personally awarded task orders for HEMP work. *Id.* As such, only the proper L-3 corporate entity (which is not named in this suit) can assert these claims. *Id.* Defendant argues that Plaintiffs may not assert the rights of their employees as a means to establish the elements of business expectancy outside of the Subcontract. *Id.*

Third, Plaintiffs argue that its business expectancy emanates from its incumbency as to previous task orders that Defendant awarded to Plaintiffs (Doc. 114). Specifically, Plaintiffs argue that they had a right (and that Defendant had an obligation to permit Plaintiffs) to priority access to the HEMP field by virtue of their other corporate entities' presence and past success in the industry. *Id.* Defendant argues that Plaintiffs' incumbency argument fails because these

tasks arose from performing task orders issued under the Subcontract. *Id.* Therefore, the business expectancy for the same work to be performed in the future is also based on the Subcontract. *Id.*

Here, The Court finds that Plaintiffs cannot assert that their rights or business expectancy arose outside of the Subcontract. Since neither named Plaintiff is a party to nor an assignee of the Subcontract, it follows that neither named party can have any rights or business expectancy outside of the Subcontract. *See Halifax Corp.*, 253 Va. 292 (Va. 1997).

2. Assignment of the Subcontract

The Court finds that the named Plaintiffs failed to provide sufficient evidence that the Subcontract, governed by Virginia law, was assigned to them. Virginia law and not federal common law governs the assignability of the Subcontract. *See Christian v. Bullock*, 215 Va. 98, 205 S.E.2d 635, 638 (Va. 1974) (stating that Virginia law governs contracts made in Virginia unless a valid contractual provision dictates a different choice of law). *See also Artistic Stone Crafters, Inc. v. Safeco Ins. Co. of Am.*, 726 F. Supp. 2d 595, 600 (E.D. Va. 2010) (stating that *if* the action has been transferred to a federal court located in Virginia pursuant to a forum selection clause in the Subcontract, the Court looks to Virginia's choice-of law rules) (emphasis added). Here, Plaintiffs argue that federal common law governs the assignment of the Subcontract, specifically the Anti-Assignment clause (which if applied, would require express consent from the prime contractor before an assignment of the Subcontract to another entity) (Doc. 114). Plaintiffs have not submitted any evidence that the prime contractor (SI International) consented to the assignment of the Subcontract. Plaintiffs argue that the federal Anti-Assignment Act, coupled with judicial opinions create a mandatory exception to the prohibition against assignment of federal prime contracts. *Id.* Plaintiffs also argue that Defendant, through their

9

conduct, i.e., Defendant's continued communication with Plaintiff and awarding of task orders to Plaintiffs, effectively waived the protection of the Anti-Assignment clause. *Id.* The language of the Anti-Assignment clause in the Subcontract states:

> [T]his Subcontract shall be construed and interpreted according to the federal common law of government contracts as enunciated and applied by federal judicial bodies, boards of contract appeals, and quasi-judicial agencies of the federal government and as set forth in the applicable provisions of federal law and regulation. To the extent that federal government contract law does not resolve a particular issue, the laws of the Commonwealth of Virginia shall apply[.]

(Doc. 35). Defendant argues that this exception is not applicable (Doc. 123). As such, Defendant's conduct in maintaining a professional relationship with Plaintiffs is irrelevant. *Id.* As a threshold matter, the Anti Assignment Act does not apply to the assignability of the Subcontract because the Anti Assignment Act is a federal statute. *See* 31 U.S.C.A. § 203. Notably, the two cases Plaintiffs cite to support its argument that the transaction between L-3 Services and L-3 ATI effected an assignment by operation of law trace back to a non-binding opinion by the Government Accountability Office ("GAO") (Doc. 114). This Court is not bound by GAO's determination, particularly because the GAO opinion creating this exception is not rooted in any statutory or case law exception but rather previous opinions issued by GAO. *See, generally, Global Computer Enters., Inc.* 88 Fed. Cl. at 412.

Alternatively, Plaintiffs argue that this exception applies because the Subcontract was assigned to them in the reorganization of their business (Doc. 114). Plaintiffs concede that there has been no "sale of an entire business" by referring to the relationship between L-3 Services and L-3 ATI as a "reorganization." *Id.* Defendant argues Plaintiffs have not and cannot show that there has been a "sale of an entire business" that would result in an "assignment by operation of law" (Doc. 123). Instead, Plaintiffs stated that "in 2011, L-3 decided to spin-off most of L-3 Services as an independent, publicly traded corporation..., but decided to retain the Applied

Technologies Division and all of its assets" (Doc. 114). Defendant argues that this is not sufficient to satisfy the claimed exception to the general prohibition against assignment of prime contracts (Doc. 123). In sum, neither the Anti-Assignment Act nor an exception to the Anti-Assignment Act compels the assignment of the Subcontract from L-3 Services to L-3 ATI without the consent of the prime contractor. Here, The Court holds that neither named Plaintiff was properly assigned the Subcontract under Virginia law.

3. Standing

The Court holds that Plaintiffs fail to establish the requite elements of standing under Article III. To establish standing to sue under Article III, a plaintiff must prove three elements: First, the plaintiff must have suffered an "injury in fact" – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical[.]'" Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 112 S.Ct. 2130 (1992). The Supreme Court has "consistently stressed" that a plaintiff "must establish that he has a 'personal stake' in the alleged dispute, and that the alleged injury suffered is particularized as to him." *See Raines v. Byrd*, 521 U.S. 811, 819 (1997).

Plaintiffs argue that they are the correct parties in this matter because the Subcontract was assigned to them (Doc. 114). Defendant argues that there is no material dispute that the injury sought to be remedied are lost revenues under task orders issued pursuant to the Subcontract

(Doc. 123). Here, neither named Plaintiff is a party to, nor the assignee of, the Subcontract. *Id.* Accordingly, neither Plaintiff has any "personal stake" in this litigation.

Thus, the Court holds that (1) any right or business expectancy necessarily arose from the Subcontract in dispute; (2) Plaintiffs failed to sufficiently establish that they are party to or assignees of the Subcontract; and (3) Plaintiffs failed to establish the requisite elements of standing under Article III.

### B. Plaintiffs' Declaratory Judgment Claims

The Court holds Plaintiffs' declaratory judgment claims alleged in Counts 80 and 81 of the Amended Complaint are not ripe for adjudication. "The doctrine of ripeness prevents judicial consideration of issues until a controversy is presented in 'clean-cut and concrete form.'" *Miller v. Brown*, 462 F.3d 312, 318-19 (4th Cir. 2006) (quoting *Rescue Army v. Mun. Court of L.A.*, 331 U.S. 549, 584, 67 S.Ct. 1409 (1947)). The burden of proving ripeness falls on the party bringing suit. *See Renne v. Geary*, 501 U.S. 312, 316 (1991). To determine whether the case is ripe, the court must "balance 'the fitness of the issues for judicial decision with the hardship to the parties of withholding court consideration.'" *Franks v. Ross*, 313 F.3d 184, 194 (4th Cir. 2002) (quoting *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 733, 118 S. Ct. 1665, 140 L. Ed. 2d 921 (1998)). A case is fit for judicial decision when the issues are purely legal and when the action in controversy is final and not dependent on future uncertainties. *Charter Fed. Sav. Bank v. Office of Thrift Supervision*, 976 F.2d 203, 208 (4th Cir. 1992).

Plaintiffs contend Defendant knowingly excluded Plaintiffs from the receiving information about the task orders on time, making it practically impossible for Plaintiffs to participate in the bidding process (Doc. 114). Plaintiffs argue that this behavior shows sufficient immediacy and reality to warrant issuance of declaratory judgment. *Id.* Defendant argues that these declaratory

claims are not ripe for adjudication because they are based on injuries that *might* occur *if* Defendant competes with Plaintiffs for future projects "currently being planned" by the USAFSC (Doc. 123). Plaintiffs do not allege evidence that Defendant's actions have excluded them from any USAFSC task orders. Accordingly, the Court finds Plaintiffs' injuries alleged in Counts 80 and 81 of the Amended Complaint are not ripe for adjudication because they have not occurred.

## VIII. CONCLUSION

The Court **GRANTS** Defendant's Motion to Dismiss (Doc. 34) in its entirety for four reasons. First, any rights or business expectancy of receiving task order necessarily arose from the Subcontract. Second, the Subcontract, governed by Virginia law, was never assigned to either named Plaintiff. Third, because the Subcontract was never assigned to either named party, Plaintiffs cannot to establish the requisite elements of standing under Article III. Fourth, Plaintiffs' declaratory judgments claims are not ripe for adjudication.

**IT IS HEREBY ORDERED** that Defendant Serco, Inc.'s 12(b)(1) Motion to Dismiss (Doc. 34) is **GRANTED**, and this case is **DISMISSED without PREJUDICE.**

**IT IS SO ORDERED.**

ENTERED this 3rd day of November, 2015.

Alexandria, Virginia
11/ 3 / 2015

/s/
Gerald Bruce Lee
United States District Judge

# L-3 FLOW CHART

- **United States Air Force Space Command**
- 3/2004 → **SI International, Inc** (Prime Contractor) contracts with Titan
- 12/2004 → **The Titan Corporation** (Sub Contractor)
- 1/31/02 — Titan and Jaycor merge to form **The Titan Corporation**
- 6/2/05 — The Titan Corporation merges with Saturn VI Acquisition Corp (a subsidiary of L-3 Communications Corp)
- 12/6/05 — Titan changes its name to **L-3 Communications Titan Corp**
- 12/13/07 — L-3 Communications Titan Corp changes its name to **L-3 Services, Inc.**
- 12/20/11 — L-3 Services, Inc forms **L-3 Applied Technologies**, a subsidiary of L-3 Services.
- 12/20/11 — L-3 assigns all assets in the applied technologies division (including the subcontract) to L-3 Applied Technologies